IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| vs. | Cv. No. 03-2681-B/P |
| | Cr. No. 99-20079(G) |
| DARRYL CLEAVES, | |
| Defendant. | |

---

ORDER DENYING MOTIONS TO AMEND AND SUPPLEMENT
ORDER DENYING MOTION UNDER 28 U.S.C. § 2255
ORDER DENYING CERTIFICATE OF APPEALABILITY
AND
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH

---

On September 9, 2003, Defendant Darryl Cleaves, Bureau of Prisons inmate registration number 15087-076, an inmate at the Federal Correctional Institution (FCI) in Memphis, filed a pro se motion under 28 U.S.C. § 2255, accompanied by a legal memorandum, seeking to set aside his conviction for violating 21 U.S.C. § 846.

I.   Procedural History

On March 23, 1999, a federal grand jury returned a one count indictment against Cleaves and seven codefendants charging them with conspiracy to distribute in excess of five kilograms of cocaine and 100 kilograms of marijuana.  On February 7, 2000, Cleaves proceeded to trial before United States District Judge Julia Gibbons and on February 10, 2000, the jury returned a verdict of guilty.  Judge Gibbons conducted a sentencing hearing on June 9, 2000, at which time Cleaves was sentenced to life imprisonment

under 21 U.S.C. § 841(b)(1)(A).  Judgment was entered on June 14,
2000.  Cleaves appealed and the Sixth Circuit Court of Appeals
affirmed his conviction for conspiracy but vacated the Court's
post-verdict determination of drug amount and remanded the case for
resentencing.  United States v. Cleaves, 299 F.3d 564 (6th Cir.
Aug. 6, 2002).  Judge Gibbons conducted the resentencing hearing on
October 4, 2002, and imposed a sentence of three hundred months
imprisonment, to be followed by a five-year period of supervised
release.  The Court entered its amended judgment on October 23,
2002 from which Cleaves did not appeal.

II.  Motions to Amend

     The Defendant filed motions to amend[1] his motion to vacate on
July 19, 2004, January 31, 2005, and August 7, 2006.  The pleadings
submitted on July 19, 2004 and January 31, 2005 seek to raise
claims under Blakely v. Washington, 542 U.S. 296 (2004), and United
States v. Booker, 543 U.S. 220 (2005).  The motion filed on August
7, 2006 attempts to assert four new claims which were not
previously presented in the original motion or motions to amend.

     The mandate of Fed. R. Civ. P. 15(a), that a court freely
grant leave to amend when justice so requires, has been interpreted
to allow supplementation and clarification of claims initially
raised in a timely § 2255 motion.  See Anderson v. United States,
No. 01-2476, 2002 WL 857742 at *3(6th Cir. May 3, 2002); Oleson v.

---

     [1]     Cleaves also characterized his pleadings as motions to "supplement."
The Court has determined that the motions to amend do not contain any argument
supplementing the original issues of the timely filed motion to vacate.  Instead,
the motions raise entirely new issues.

<u>United States</u>, No. 00-1938, 2001 WL 1631828 (6th Cir. Dec. 14, 2001).

"[F]or purposes of collateral attack, a conviction becomes final at the conclusion of direct review." <u>Johnson v. United States</u>, 246 F.3d 655, 657 (6th Cir. 2001). The amended judgment in Defendant's criminal case was entered on October 23, 2002. His conviction became final no later than December 4, 2002, when the thirty-day limit for seeking an extension of time to file a notice of appeal based on excusable neglect expired. Fed. Rule. Crim. P. 4(b)(4). Accordingly, the limitations period expired on December 4, 2003. Defendant's motion to vacate was timely filed on September 9, 2003, however, all of the subsequent motions to amend were filed after December 4, 2003, and are untimely.

Once the statute of limitations has expired, allowing amendment of a petition with additional grounds for relief would defeat the purpose of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996)(codified, inter alia, at 28 U.S.C. § 2244 et seq.)(AEDPA). <u>Oleson</u>, 2001 WL 1631828 at *3 (citing <u>United States v. Thomas</u>, 221 F.3d 430, 436 (3d Cir. 2000)("[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired.")).[2] The motions to amend filed on July

_____

[2]    <u>See</u> <u>also</u> <u>United States v. Pittman</u>, 209 F.3d 314, 317-18 (4th Cir. 2000)("The fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c). . . Such a broad view of 'relation back' would undermine the limitations period set by Congress in the AEDPA" (citing <u>United States v. Duffus</u>, 174 F.3d 333, 337 (3d Cir. 1999)).

19, 2004, January 31, 2005, and August 7, 2006, are DENIED as barred by the AEDPA statute of limitations.[3]

---

[3]     Furthermore, to the extent that the motions to amend contend that Blakely and Booker are "new rule[s] of constitutional law" which entitle him to relief, such amendment would be futile, as Cleaves cannot demonstrate that either decision has been "made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255.  New rules of constitutional criminal procedure are generally not applied to cases on collateral review.  Teague v. Lane, 489 U.S. 288 (1989).

     In Booker, although the Supreme Court determined that its holding in Blakely applied to the Sentencing Guidelines, Booker, 543 U.S. 242-244, the Court also expressly stated that its holding must be applied to all cases on direct review.  Booker, 543 U.S. at 268 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987)("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past")).

     The Sixth Circuit determined in Humphress v. United States, 398 F.3d 855 (6th Cir. 2005), that the rule of Booker does not fall within either exception of Teague.  Id. at 863.

          First, the nonretroactivity rule "does not apply to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'"  Beard v. Banks, 542 U.S. 406, 416 (2004)(quoting Penry v. Lynaugh, 492 U.S. 302, 330 (1989)).  Because this exception is clearly inapplicable, we proceed directly to our analysis of Teague's second exception.  Beard succinctly explained the second Teague exception:

               The second exception is for watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.  We have repeatedly emphasized the limited scope of the second Teague exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that ... are implicit in the concept of ordered liberty.  And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second Teague exception.

          Beard, 492 U.S. at 417.

Humphress, 398 F.3d at 862.  Noting that the United States Supreme Court had never held that a new rule of criminal procedure falls within Teague's second

III. <u>Analysis</u>

Defendant now claims that his sentence should be set aside. Specifically, he alleges that:

1.  counsel provided ineffective assistance by failing to preserve his right to appeal the district court's determination of the type of drug involved in the conspiracy, in violation of <u>United States v. Dale</u>, 178 F.3d 429, 430 (6th Cir. 1999);

2.  the evidence was insufficient to support the charge of conspiracy;

3.  the district court erred in sentencing Cleaves as a career offender by use of prior offenses that were consolidated for sentencing in state court; and

4.  counsel was ineffective by failing to object to use of the prior consolidated offenses at sentencing.

Issue one was addressed and determined on appeal. Further consideration of that claim is barred here. "A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." <u>DuPont v. United States</u>, 76 F.3d 108, 110 (6th Cir. 1996). Cleaves attempts to recast issue 1 as a claim of ineffective assistance.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984) establishes the standard for an ineffective assistance claim. A petitioner must show:

1.  deficient performance by counsel; and
2.  prejudice to the defendant from the deficient performance.

<u>See</u> <u>id.</u> at 687.

---

exception, the Sixth Circuit concluded that the rule of <u>Booker</u> does not apply retroactively in collateral proceedings. <u>Humphress</u>, 398 F.3d at 863. Neither <u>Blakely</u> nor <u>Booker</u> provide Cleaves with a basis for relief in this proceeding.

5

A prisoner attacking his conviction bears the burden of establishing that he suffered some prejudice from his attorney's ineffectiveness.  Lewis v. Alexander, 11 F.3d 1349, 1352 (6th Cir. 1993); Isabel v. United States, 980 F.2d 60, 64 (1st Cir. 1992). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Strickland, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  Id. at 697.

To demonstrate prejudice, a movant under § 2255 must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id.  Additionally, however, in analyzing prejudice,

> the right to the effective assistance of counsel is
> recognized not for its own sake, but because of the
> effect it has on the ability of the accused to receive a
> fair trial.  Absent some effect of challenged conduct on
> the reliability of the trial process, the Sixth Amendment
> guarantee is generally not implicated.

Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  "Thus an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Fretwell, 506 U.S. at 369.

In evaluating an ineffective assistance claim, the Court should not second guess trial counsel's tactical decisions. Adams v. Jago, 703 F.2d 978, 981 (6th Cir. 1983).  If a reviewing court

can determine lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  Id. at 697.  See also United States v. Haddock, 12 F.3d 950, 955 (10th Cir. 1993).

The Sixth Circuit Court of Appeals reviewed Cleaves' claim under United States v. Dale and stated as follows:

> Cleaves argues on appeal that in assessing his sentence, the district court improperly determined the type of drug involved in the conspiracy, in violation of United States v. Dale, 178 F.3d 429, 430 (6th Cir. 1999).  Because Cleaves did not object to the jury instruction that produced a general verdict at his trial – indeed, he acquiesced in it – we review his claim for plain error only.  See Fed. R. Crim. Pro. 52(b); see also United States v. Olano, 507 U.S. 725, 731 (1993).  Plain error review is narrow in scope, involving (1) a finding of error (2) that is plain and (3) that affects the defendant's substantial rights.  See Johnson v. United States, 520 U.S. 461 (1997).  Even if all three of these factors are present, we will reverse on the basis of such error only if it " seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Olano, 507 U.S. at 732; see also United States v. Cotton, 535 U.S. 625 (2002).
>
> Title 21 U.S.C. § 846 provides that the defendant receive "the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy."  In United States v. Dale, we held that when a conspiracy count alleges more than one substantive offense, and the verdict is general rather than specific, the defendant may not be sentenced to more than the maximum sentence for the offense with the shorter statutory maximum.  178 F.3d at 432.
>
> At the time of trial, the district judge's decision to forego a special verdict resulted from her recognition that, given the amount of both marijuana and cocaine alleged in the indictment, conviction of conspiracy related to either drug carried the same statutory maximum.  See 21 U.S.C. § 841(b)(1)(A) & (B).  This decision was further informed by the fact that at the time of the ruling, the trial judge was charged with the responsibility of determining the amount of drugs involved in the conspiracy.  Accordingly, with the assent of both the prosecutor and the defendant, the district court held that a jury determination of the specific drug involved in the conspiracy was unnecessary.  However, had

7

the district court's ruling occurred after the Supreme
Court's decision in Apprendi v. New Jersey, 530 U.S. 466
(2000), the court would undoubtedly have found that
because the statutory maximum for undetermined amounts of
marijuana and cocaine differed dramatically, the jury
should have been directed to make a specific finding
concerning the drug involved in the offense.  Compare 21
U.S.C. § 841(b)(1)(C)(limiting a sentence for an unknown
quantity of cocaine to 30 years) with 21 U.S.C. §
841(b)(1)(D)(limiting a sentence for an unknown quantity
of marijuana to ten years).

Under Apprendi failure to instruct the jury to determine
both the type of drug and the drug quantity involved in
the conspiracy amounted to plain error.  See Johnson v.
United States, 520 U.S. 461, 468 (1997)("Where the law at
the time of trial was settled and clearly contrary to the
law at the time of appeal, it is enough that an error be
'plain' at the time of appellate consideration").
Whether the decision "affected substantial rights" is
less clear, but we need not resolve this issue because we
find that the error did not "seriously affect the
fairness, integrity, or public reputation of judicial
proceedings.  See United States v. Cotton, 535 U.S. at
633.

The evidence that Cleaves was involved in a conspiracy to
distribute cocaine was overwhelming. Given the extensive
testimony detailing the many trips that Cleaves made back
and forth between the source city and the sale city, each
time picking up several kilograms of cocaine, and the
evidence related to the secret compartment in his
automobile designed for cocaine transport, the record
clearly demonstrates that Cleaves was a cocaine dealer.
Therefore, based upon the testimony presented at trial,
we conclude that no rational jury could have found that
Cleaves was involved in a conspiracy to distribute
marijuana rather than cocaine.  See United States v.
Bowens, 224 F.3d 302, 314-15 (4th Cir. 2000)(overwhelming
evidence concerning the drug type is sufficient to uphold
a conviction and sentence where the drug type was
improperly determined by the trial judge rather than the
jury).

Accordingly, the district court's post-verdict
determination of the drug involved altogether fails to
impugn the fairness, integrity, or public reputation of
the judicial proceedings in this case.  As the Supreme
Court recently explained in United States v. Cotton:

        ...[T]he fairness and integrity of the
        criminal justice system depends on meting out

> those inflicting the greatest harm on society
> the most severe punishments. The real threat
> then to the 'fairness, integrity, and public
> reputation of judicial proceedings' would be
> if respondents, despite the overwhelming and
> uncontroverted evidence that they were
> involved in a vast drug conspiracy, were to
> receive a sentence prescribed for those
> committing less substantial drug offenses
> because of an error that was never objected to
> at trial.

> 535 U.S. at 634.

> Hence, we find no reversible error in connection with the
> district court's decision to forego a special verdict as
> to the drug type.

United States v. Cleaves, 299 F.3d at 567-569.

Counsel's failure to be clairvoyant during trial with respect to the Supreme Court's ruling in Apprendi does not constitute ineffective assistance. The issue was available during and raised on direct appeal without success. Cleaves advances no factual basis or legal argument which counsel could have but did not raise on direct appeal which would have altered the decision of the Sixth Circuit. Accordingly, the Defendant is unable to establish any deficient performance by counsel. Furthermore, this alleged failure did not result in any prejudice to the prisoner. Issue one is DENIED.

Cleaves contends the evidence was insufficient to convict him of conspiracy. A challenge to the sufficiency of the evidence is not cognizable in this proceeding.

> [W]e have repeatedly held that the sufficiency of the
> evidence to support a conviction may not be collaterally
> reviewed on a Section 2255 proceeding. United States v.
> Shields, 291 F.2d 798 (6th Cir. 1961), cert. denied, 368
> U.S. 933, 82 S.Ct. 371, 7 L.Ed.2d 196.

9

United States v. Osborne, 415 F.2d 1021, 1024 (6th Cir. 1969).
Section 2255 cannot be used to attack the sufficiency of the
evidence by which a defendant is convicted, as that is an issue
that can be raised only by direct appeal.  See Stephan v. United
States, 496 F.2d 527, 528-29 (6th Cir. 1974); Jones v. United
States, 319 F.2d 958 (6th Cir. 1963); Hutchinson v. United States,
278 F.2d 920, 921 (6th Cir. 1960); Ford v. United States, 234 F.2d
835 (6th Cir. 1956); Frierson v. United States, 223 F.2d 255 (6th
Cir. 1955); Marshall v. United States, 217 F.2d 467, 469 (6th Cir.
1954); Davilman v. United States, 180 F.2d 284, 286 (6th Cir.
1950).  Furthermore, the above cited opinion of the Sixth Circuit
on direct appeal demonstrates that the Sixth Circuit determined
that the evidence of Cleaves' involvement in a conspiracy to
distribute cocaine was overwhelming.  Cleaves, 299 F.3d at 569.
Issue two is without merit and is DENIED.

Cleaves next argues that the Court erred in sentencing him as
a career offender by use of prior offenses that were consolidated
for sentencing in the state court.  He also contends that counsel
was ineffective by failing to object to the use of these offenses.
The Defendant contends that he was improperly enhanced for state
offenses which were "felony-attempts," state case numbers 86-05005,
86-06433, 86-06434 and 89-01966.  Cleaves admits that although the
arrests were consolidated for sentencing and the sentences run
concurrently, they were separated by intervening arrests.  However,
because the convictions occurred prior to the enactment of the
United States Sentencing Guidelines ("U.S.S.G.") on November 1,

10

1987, he insists the guidelines and amended commentary to section 4A1.2 were applied to him in violation of the Ex Post Facto Clause of the Fifth Amendment. The commentary, promulgated in Amendment 382 of the U.S.S.G. states, in pertinent part:

> The Commentary to §4A1.2 captioned "Application Notes" is amended in Note 3 by deleting:
>
>> "Cases are considered related if they (1) occurred on a single occasion,",
>
>> and inserting in lieu thereof:
>
>> Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing. . . .

Application Note 3 to § 4A1.2.

The Ex Post Facto Clause prohibits any law which increases the punishment for a crime, or which produces a sufficient risk of increasing the punishment for a crime, beyond that prescribed when the crime was committed. California Dept. of Correction v. Morales, 514 U.S. 499, 504, 509 (1995); Shabazz v. Gabry, 1213 F.3d 909, 913 (6th Cir. 1997). The Ex Post Facto Clause does not, however, bar every legislative change which bears a conceivable risk of affecting punishment. Morales, 514 U.S. at 508. Furthermore, recidivism statutes do not violate the Ex Post Facto Clause. Parke v. Raley, 506 U.S. 20, 27 (1992); Spencer v. Texas, 385 U.S. 554, 560 (1967)(citing Oyler v. Boles, 368 U.S. 448, 452

11

(1962)); <u>McDonald v. Massachusetts</u>, 180 U.S. 311, 313 (1901).  This argument is meritless.

Additionally, Cleaves demonstrates no basis for a claim that the four different offenses were factually related or part of a single common plan or scheme, rather than four separate criminal acts.  The state grand jury returned four separate indictments, the state charges were under four different docket numbers, and Defendant received four separate sentences, even if the sentences were run concurrently.  <u>United States v. Garcia</u>, 962 F.2d 479 (5th Cir. 1992); <u>United States v. Fitzhugh</u>, 984 F.2d 143 (5th Cir. 1993).

Furthermore, under § 4B1.1 of the U.S.S.G.:

> A defendant is considered a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. . . .

The instant crime was a controlled substance offense.  Even counting Defendant's disputed attempted felonies as one crime for a controlled substance offense, he received another felony drug conviction in 1995 for which he was on supervised release at the time of his arrest in this case.  Accordingly, he had two prior controlled substances offenses and the career offender enhancement was clearly applicable.  Defendant's criminal history category was properly determined to be Category VI whether by counting criminal history points or by application of U.S.S.G. § 4B1.1.  Issues three and four are DENIED.

IV.  <u>Appeals Issues</u>

Consideration must also be given to issues that may occur if the Defendant files a notice of appeal.  Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion.  Section 2255 now incorporates the old habeas procedure of issuing or denying a certificate of probable cause, now renamed a certificate of appealability.  No § 2255 movant may appeal without this certificate.

<u>Lyons v. Ohio Adult Parole Auth.</u>, 105 F.3d 1063, 1073 (6th Cir. 1997), held that district judges may issue certificates of appealability under the AEDPA.  The Court also held that AEDPA codifies in amended § 2253 the standard for issuing a certificate of probable cause found in prior § 2253, which was essentially a codification of <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983).  <u>See</u> <u>Lyons</u>, 105 F.3d at 1073.

> [P]robable cause requires something more than the absence of frivolity . . . and the standard for issuance of a certificate of probable cause is a higher one than the 'good faith' requirement of § 1915. . . . [A] certificate of probable cause requires petitioner to make a substantial showing of the denial of [a] federal right. [A] question of some substance, or a substantial showing of the denial of [a] federal right, obviously [does not require] the petitioner [to] show that he should prevail on the merits.  He has already failed in that endeavor. Rather, he must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.

<u>Barefoot</u>, 463 U.S. at 893 (internal quotations and citations omitted).  In this case, the Defendant's claims are clearly without merit and he cannot present a question of some substance about

which reasonable jurists could differ.  The Court therefore denies a certificate of appealability.

The Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)(3), does not apply to appeals of orders denying § 2255 motions.  Hereford v. United States, 117 F.3d 949, 951 (6th Cir. 1997); cf. McGore v. Wrigglesworth, 114 F.3d 601, 610 (6th Cir. 1997) (instructing courts regarding proper PLRA procedures in prisoner civil-rights cases).  Rather, to seek leave to appeal in forma pauperis in a § 2255 case, and thereby avoid the $455 filing fee required by 28 U.S.C. §§ 1913 and 1917,[4] the prisoner must seek permission from the district court under Fed. R. App. P. 24(a). Hereford, 117 F.3d at 952.  If the motion is denied, the prisoner may renew the motion in the appellate court.

Rule 24(a) states, in pertinent part that:

A party to an action in a district court who desires to proceed on appeal in forma pauperis shall file in the district court a motion for leave to so proceed, together with an affidavit, showing, in the detail prescribed by Form 4 of the Appendix of Forms, the party's inability to pay fees and costs or to give security therefor, the party's belief that that party is entitled to redress, and a statement of the issues which that party intends to present on appeal.

The Rule further requires the district court to certify in writing whether the appeal is taken in good faith.  For the same reasons

---

[4]     The fee for docketing an appeal is $450.  See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913.  Under 28 U.S.C. § 1917, a district court also charges a $5 fee:

Upon the filing of any separate or joint notice of appeal or application for appeal or upon the receipt of any order allowing, or notice of the allowance of, an appeal or of a writ of certiorari $5 shall be paid to the clerk of the district court, by the appellant or petitioner.

the Court denies a certificate of appealability, the Court determines that any appeal in this case would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter by this Defendant is not taken in good faith, and he may not proceed on appeal in forma pauperis.

IT IS SO ORDERED this 19th day of September, 2006.


s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE